Filed 4/21/26  City of Huron v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF HURON,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>Respondent;<br><br>ABDO T. SAEED, et al.,<br><br>Real Parties in Interest. | F090300<br><br>(Super. Ct. No. 24CECG02366)<br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Kristi C. Kapetan, Judge.

Costanzo & Associates and Neal E. Costanzo for Petitioner.

No appearance for Respondent.

Kahn, Soares & Conway, Richard C. Conway and Sarjun S. Bal, for Real Parties in Interest.

-ooOoo-

This case arose from a contractual dispute between the City of Huron on the one hand, and Abdo T. Saeed and Saber Mohammed Saeed Meftah, on the other. The contract at issue was a signed, written agreement concerning an *exchange* of real property, that is, the exchange of a parcel owned by the City of Huron for a parcel owned by Saeed and Meftah. The City of Huron eventually took the position that the contract was invalid. Saeed and Meftah responded by filing a lawsuit seeking, among other things, specific performance under the contract.

In connection with their lawsuit, Saeed and Meftah recorded a notice of lis pendens with respect to the parcel owned by the City of Huron that was the subject of the contract. The City of Huron thereafter filed a motion to expunge the lis pendens, which motion was denied by the trial court. Saeed and Meftah, as the prevailing parties on the motion to expunge the lis pendens, subsequently filed a motion for statutory attorney fees. The trial court granted the motion and awarded them $5,690.44 in attorney fees.

The City of Huron filed a petition for writ of mandate, review and/or prohibition or other appropriate extraordinary relief, challenging the trial court's ruling awarding attorney fees to Saeed and Meftah, the real parties in interest. This court issued an order to show cause with respect to City's petition. Pursuant to the order to show cause, Saeed and Meftah filed a return, and City filed a reply to the return.

The City of Huron's writ petition is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Preliminarily, we note that the City of Huron's (City or Huron) writ petition to this court does not adequately summarize the factual background relevant to the claims raised therein.[1] City's failure to adequately summarize the entirety of the record relevant to its

---

[1] City did not even supply, in the exhibits submitted in support of its instant writ petition, the entirety of the relevant record. Rather, City pointed us to exhibits it filed in this court in support of a *prior* writ related to this case, namely Court of Appeal Case No. F089801. Specifically, City's instant petition states: "Huron requests that this court take judicial notice of the exhibits filed with the petition on file in this court in Case

2.

claims, undercuts the claims. In any event, given the importance of the evidence before the trial court to the resolution of City's instant claims, we summarize below all the relevant facts, along with the applicable procedural history.

**The Complaint Initiating the Underlying Action**

On May 31, 2024, Saeed and Meftah filed, in the Fresno County Superior Court, a complaint against City alleging breach of contract and seeking specific performance, among other remedies.

The complaint indicated that Saeed and Meftah "operate Huron Valley Foods, a market in Huron[.]" The complaint alleged that in 2023, Saeed and Meftah reached an agreement with City. City agreed to acquire Saeed and Meftah's real property located at 17061 Myrtle Avenue in Huron (Myrtle Avenue property or Myrtle property), in exchange for "approximately 26,158 square feet of [C]ity-owned real property" located behind Saeed and Meftah's store (City-owned property or City property). The complaint stated the agreement was memorialized in writing, approved by the Huron City Council, and signed by the mayor of Huron as well as by Saeed and Meftah.

As noted, the agreement provided that City would acquire Saeed and Meftah's Myrtle Avenue property, while Saeed and Meftah would acquire City's parcel behind their store.[2] According to the complaint, Saeed and Meftah entered into the agreement with the goal of acquiring City's parcel for use as a parking lot for their business.

The complaint further alleged: "After signing the [a]greement, [City] failed and refused to perform the obligations to which [City] is bound under the [a]greement." The complaint added that instead City "initiated an aggressive plan of action to sell the City

___

No. F089801." Since this request was unopposed, we grant it. However, we note that City's maneuver, coupled with the lack of an adequate factual summary in its petition, required this court to independently sift through the records in two separate matters to ascertain the relevant facts.

[2] The Myrtle Avenue property was identified by APN 075-224-22, while the City-owned property was identified by APN 075-110-26.

3.

[p]roperty to the owners of Los Amigos Food Center." More specifically, the complaint stated: "On October 25, 2023, [Saeed and Meftah] had a discussion with John Kunkel, the Huron City Manager. In the discussion, although it was not clearly communicated with [them], [Saeed and Meftah] believed that the City of Huron would not be honoring [its] obligations under the [a]greement."

The complaint continued: "On November 20, 2023, [Huron's City Attorney] communicated to [Saeed and Meftah's] counsel that [City] would not perform its obligations under the [a]greement. Specifically, [City] would not [follow through on] the exchange [of] the [Myrtle Avenue property] for the [City-owned property] as required by the [a]greement."

**The Signed, Written Contract or Agreement Referenced in the Complaint**

As discussed above, the complaint arose from an alleged agreement between Saeed and Meftah on one hand, and City on the other. A copy of the written agreement, entitled "Agreement for Exchange of Real Property," was attached to the complaint as Exhibit A.[3] (Capitalization omitted.) The agreement stated it was "made as of this 16th of May, 2023." The agreement was signed by Saeed, Meftah, and Huron's mayor but there were no dates corresponding to any of the signatures. The complaint stated that while the parties formed the agreement on May 16, 2023, it was signed by City's mayor and executed by City on June 26, 2023.

Among other provisions, the agreement provided: "The parties agree that the City property is of equal value to the [Myrtle Avenue] property and the parties agree to exchange the properties without any additional consideration by one party to the other by the recordation of grant deeds *on the close of escrow that will be opened with Placer Title*

---

[3] The agreement reflects some drafting errors, in that some sentences are missing words, contain excess words, or contain incorrect grammar. Further, the agreement initially reveals some ambiguities, inconsistencies, or uncertainties.

*Company upon the full execution of this [a]greement.*  This [a]greement will be deposited into escrow[;] the escrow holder shall prepare grant deeds of the [Myrtle Avenue] property conveying that property to the City and of the City-owned property conveying that property to [Saeed and Meftah]."  (Italics added.)

The agreement further provided:  "As soon as possible after the full execution of this [a]greement, the parties shall open an escrow for the purpose of consummating the exchange of property by depositing an executed copy of this [a]greement with Placer Title Company, Fresno, California, escrow holder."  The agreement added:  "Upon delivery [to the escrow holder] of the … fully executed copy of this [a]greement … escrow shall be deemed open[.]"

In addition, the agreement stated:  "Escrow shall close and the grant deeds shall be recorded in the Office of the County Recorder of Fresno County on June 20, 2023, (Close of Escrow), or within the time set forth below, or from notice specified prior to the Close of Escrow.  Each party shall deliver to [the] escrow holder at least one day prior to the Close of Escrow, the duly executed and acknowledged grant deed required to be recorded by that party by this [a]greement."

The agreement contained a waiver provision:  "No waiver by any party at any time of any breach of any provision of this [a]greement shall be deemed a waiver [of] a breach of any other provision herein or a consent to any subsequent breach of the same or another provision."

The agreement also contained a severance provision:  "If any provision (or any portion of any provision) of this [a]greement is held to be illegal, invalid, or unenforceable by a court of competent jurisdiction … the legality, validity, and enforceability of the remaining provisions (or the balance of such provision) shall not be affected thereby."

The agreement also contained a time is of the essence provision:  "Time is of the essence with respect to all matters contained in this [a]greement."

5.

Finally, the agreement contained an attorney fees provision:  "If either party named herein brings an action or proceeding to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action (or proceeding), on trial or appeal, shall be entitled to its reasonable attorneys' fees to be paid by the losing party as fixed by the Court[.]"

**Lis Pendens Filed by Saeed and Meftah**

On May 31, 2024, the same day as the complaint was filed, Saeed and Meftah filed a notice of pendency of action (lis pendens) on grounds the action involved "a real property claim" as to the City-owned property implicated in the agreement.  The lis pendens was subsequently recorded, on June 12, 2024.

**City's Answer to Saeed and Meftah's Complaint**

City filed an answer to Saeed and Meftah's complaint on August 13, 2024.  The answer asserted, among other things, an affirmative defense that no contract was formed.  More specifically, the answer stated:  "The written Agreement for Exchange of Real Property dated May 16, 2023, provides that time is of the essence with respect to all matters contained in the Agreement and that escrow on the exchange shall close on June 20, 2023.  On or about June 12, 2023, Plaintiffs, or one of them, or some person acting on their behalf, retrieved from the City the Agreement for Exchange of Real Property that had been signed by the Mayor as authorized by the City Council's approval of the Agreement and Plaintiffs never executed or returned to the City, or to anyone acting on the City's behalf, a fully executed version or a counterpart of an executed version of the Agreement prior to the mandatory date for close of escrow, June 20, 2023 so that no contract was ever formed."

City's answer also asserted, among other things, an affirmative defense of "failure of performance/discharge."  (Capitalization omitted.)  In this context, the answer stated: "The deposit of a fully executed Agreement for Exchange of Real Property was required by the terms of that agreement to open escrow, and no such agreement was deposited into

6.

the identified escrow by either party.  The placement of a properly notarized executed deed for the property to be exchanged under the Agreement was required by the terms of the contract as to which time was made of the essence, to occur on or before June 20, 2023 and neither party deposited any such deed into escrow, nor was any escrow … established so that both parties failed to perform concurrent conditions which results in a discharge of both parties['] duty to perform under the Agreement."

**City's Motion to Expunge Lis Pendens**

On January 2, 2025, City filed a motion to expunge the lis pendens recorded by Saeed and Meftah.  City argued the motion was made on the ground that Saeed and Meftah could not "establish the probable validity of the real property claim contained in the [c]omplaint by a preponderance of the evidence," rendering the lis pendens subject to expungement under Code of Civil Procedure section 405.32.[4]  City stated in its motion papers:  "It appears [Saeed and Meftah] abandoned the proposed contract, and never intended to consummate [it].  The renewed interest in the property appears to have been triggered by Huron contracting to sell the property to [Saeed and Meftah's] competitor."  In its motion to expunge lis pendens, City also sought "an award of reasonable attorney's fees and costs" for litigating the motion.

The Huron City Attorney, Neal Costanzo, submitted a declaration in support of City's motion to expunge lis pendens.[5]  Costanzo declared that he had "prepared" the written agreement.  The agreement was initially signed by City's mayor on May 16, 2023, in Costanzo's presence, and the Huron City Council thereafter approved the agreement on May 17, 2023.  However, Costanzo had incorrectly provided signature lines for *three* additional parties—"Abdo Saeed, Safed Maftah[,] and Saber Mohammed," rather than simply for Abdo Saeed and Saber Mohammed Saeed Meftah; Costanzo had

---

[4] Undesignated statutory references are to the Code of Civil Procedure.

[5] Costanzo also represents City in the instant writ proceeding.

7.

incorrectly split Meftah's name into two names. Therefore, Costanzo drew up a corrected signature page for the mayor to sign, along with Saeed and Meftah, and on June 7, 2023, provided the same to the mayor and to Saeed.

Costanzo declared that he heard nothing further until approximately the third week of October, when Saeed and an associate inquired about the status of the property exchange. At that point Costanzo told them there was no contract. On October 26, 2023, Costanzo received a fully executed agreement (that is, one signed by the mayor, Saeed, and Meftah) from Saeed and Meftah.

Costanzo additionally declared that in February 2024, City entered into an agreement to sell the subject City-owned property to a different party. The new agreement—a Contingent Purchase and Sale and Development Agreement—was with BFFR LLC, an entity affiliated with Los Amigos Market, "a grocery store which is a direct competitor of Valley Foods in Huron."

City's motion to expunge lis pendens was also supported by a declaration from Juanita Veliz, the Huron City Clerk. Veliz's declaration centered on an email she had sent to John Kunkel, the Huron city manager at the time, that was attached to her declaration as Exhibit 1. The email was dated Monday, June 12, 2023. The email stated that Saeed had come to see Veliz in her City Hall office the previous Friday, that is, June 9, 2023. Veliz's email stated that she gave Saeed the "corrected and signed" version of the agreement and he took it with him when he left.

While Veliz's email indicated Saeed came to her office on June 9, 2023, in her declaration, Veliz stated—based on an apparent misreading of the email attached to her declaration as Exhibit 1—that Saeed had appeared in her office on June 12, 2023. More specifically, Veliz declared: "When Mr. Saeed appeared in my office on June 12, 2023, I provided [him] with the Agreement for Exchange of Real Property that had been corrected by the City Attorney [on June 7, 2023,] [and] which I previously had signed by the Mayor, Rey Leon, prior to June 12, 2023." Veliz further declared: "Saeed took the

8.

[a]greement that had been corrected and signed by the [m]ayor.  I am not aware that Saeed ever returned a signed version of the corrected [a]greement to anyone at the City.  It was not returned to me."

**Saeed and Meftah's Opposition to City's Motion to Expunge Lis Pendens**

Saeed and Meftah filed a comprehensive opposition to City's motion to expunge lis pendens.  The opposition noted that Saeed and Meftah had "conducted written discovery and witness depositions" prior to filing the opposition.

Saeed and Meftah's opposition noted:  "Although [the agreement with City] was effective as of May 16, 2023, a corrected version [of the written contract] was prepared by the City's counsel, Neil Costanzo, on June 7, 2023, because the original [a]greement did not correctly name [Saeed and Meftah].  On June 9, 2023, Abdul Assad—an English-speaking young man who works with [Saeed and Meftah]—appeared at City Hall and was provided with the corrected version of the [a]greement."[6]  Abdul Assad provided a declaration that confirmed these details.

In addition to Abdul Assad's declaration, Saeed and Meftah further submitted in support of their opposition to City's motion to expunge, deposition testimony from Veliz, the Huron city clerk.  In her *deposition*, Veliz corrected some mistakes reflected in her prior *declaration*, which was submitted in support of City's motion to expunge.  More specifically, in her deposition, Veliz clarified (1) that the individual who came to City Hall to collect the corrected agreement was a young man between the ages of 24 and 30 years; and (2) that the date of the young man's visit was June 9, 2023, *not* June 12, 2023.  Saeed and Meftah's opposition noted that "Abdo Saeed … is a middle-aged man and does not match [the] description" of the person described by Veliz; rather, the individual who went to City Hall to collect the corrected agreement was Abdul Assad.  The

---

[6] The opposition noted that "Abdul Assad assists Plaintiff Abdo Saeed—who does not understand English well—by serving as a sort of language conduit for him in general matters."

opposition also pointed out that Veliz's email, attached as Exhibit 1 to her declaration, itself clarified that the agreement was collected on June 9, 2023, not June 12, 2023, as stated in the declaration.

Saeed and Meftah's opposition further noted that Veliz's deposition testimony also contradicted the statement in her *declaration* that the mayor of Huron had signed the corrected, written agreement *prior to* Abdul Assad's June 9, 2023, visit to City Hall. Specifically, the opposition stated: "During her deposition, Veliz admitted that *she does not recall seeing the signature page* of the [corrected] [a]greement, contradicting her declaration in which she asserted that Mayor Leon had signed the [a]greement prior to her handing it to the individual who visited City Hall on June 9, 2023." (Italics added.) Veliz's deposition transcript, submitted with the opposition, confirmed these facts.

In fact, Veliz indicated at her deposition that the corrected signature page did *not* contain *any* signatures when she provided it to Abdul Assad. Veliz was also asked at deposition whether she ever saw the corrected signature page "with anybody's signature on it at any time?" She responded she remembered that Abdo T. Saeed came into her office at some point and signed the agreement. She could not recall whether she had ever seen Mayor Leon's signature on the signature page of the corrected agreement.

Saeed and Meftah's opposition also noted: "Mayor Leon was also deposed by Plaintiffs' counsel on February 20, 2025 [and] Leon himself cannot confirm the date on which he signed the [corrected] [a]greement." Leon's deposition testimony, provided with the opposition, confirmed this point.

Saeed and Meftah's opposition explained that Mayor Leon in fact signed the corrected agreement on June 26, 2023, *after the June 20, 2023, close-of-escrow date specified therein had already passed*. The opposition stated: "On *June 26, 2023*, Abdo Saeed visited City Hall to follow up on the development and execution of the exchange [a]greement…. [Saeed] recalls the date clearly, as it was [one day] before he departed Los Angeles for Yemen. [Citation.] At City Hall, he met with Juanita Veliz, [] the City

10.

Clerk, who handed him the [a]greement to sign.  [Citation.]  After signing, Abdo Saeed waited approximately 15 minutes until Juanita Veliz returned with the [a]greement [and] relayed to Abdo Saeed that the Mayor, R[e]y Leon, [] had also signed the [a]greement."  (Italics added.)  The opposition added:  "Abdo Saeed informed [Veliz] that [Meftah] was in Yemen, to which [Veliz] responded that it was fine, and he could sign when he returned."  The opposition further noted:  "Abdo Saeed then departed for Yemen on June 2[7], 2023."  Abdo Saeed submitted a declaration that confirmed all these details; records of Saeed's travel from Los Angeles to Yemen were attached to his declaration.

The opposition explained that thereafter, "no direct action was taken by either party to perform, as [Saeed and Meftah] were under the impression that the City would hold off on doing anything with the property until [Meftah] returned to the United States and signed the [a]greement."

The opposition noted that, on August 2, 2023, the Huron City Council discussed the agreement in closed session.  The agenda for the August 2, 2023, closed session was submitted in support of this point.

The opposition continued:  "On October 25, 2023, shortly after [Meftah] returned from Yemen, [Saeed and he] spoke with Huron City Manager John Kunkel.  [Citation.]  During this discussion, although it was not clearly communicated, [Saeed and Meftah] believed that the City did not intend to honor the [a]greement.  [Citation.]  Around that same time, [Saeed and Meftah] began hearing from others in the community that the City was engaged in discussions with the owners of Los Amigos Food Center and intended to sell the [c]ity [p]roperty to them rather than proceed with the agreed-upon exchange."

The opposition added:  "During a closed session held on November 15, 2023, the Huron City Council voted not to proceed with the property exchange with [Saeed and Meftah].  This decision was confirmed in a communication from Costanzo to Plaintiffs' counsel on November 20, 2023, in which Costanzo stated that the City would 'not be

11.

performing' under the [a]greement and would not proceed with the exchange of the Myrtle [p]roperty for [c]ity [p]roperty."

In addition to setting forth the foregoing facts, the opposition provided extensive legal analysis. The opposition concluded: "A motion to expunge a lis pendens should be denied when the claimant demonstrates that the action affects real property and that the real property claims asserted in the complaint have probable validity. (Code Civ. Proc., §§ 405.31, 405.32.) Plaintiffs have made such a showing through evidence of a written, signed [a]greement for the exchange of real property and the City's subsequent refusal to perform. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion to Expunge the Notice of Pendency of Action."

**Trial Court Denied City's Motion to Expunge Lis Pendens**

On April 30, 2025,[7] the trial court denied City's motion to expunge lis pendens in a written ruling.

In its ruling, the trial court first delineated the applicable legal standard: "At any time after a notice of pendency of action has been recorded, any party may apply to the court to expunge the notice. (Code Civ. Proc. § 405.4.) The court shall expunge the lis pendens unless (1) the pleading contains a real property claim; and (2) plaintiff [shows], by a preponderance of the evidence, the probable validity of plaintiff's real property claim. (Code Civ. Proc. § 405.3.)"

Next, the trial court addressed whether a real property claim was at issue: "A real property claim is one that, if meritorious, affects title to, or the right of possession of, specific real property, or the use of an easement, identified in the pleading. (Code Civ. Proc. § 405.4.) A claim for specific performance is a real property claim. (*Hilberg v. Superior Court* (1989) 215 Cal.App.3d 539, 542.)" The court noted that the second cause of action in Saeed and Meftah's complaint was "for specific performance following a

_____

[7] Subsequent references to dates are to dates in 2025 unless stated otherwise.

breach of contract, with the end result ultimately being the exchange of the [c]ity [p]roperty for the plaintiffs' Myrtle [p]roperty." The court concluded "[t]here is a real property claim," pointing out that "the moving party does not appear to dispute" this point.

The trial court thereafter addressed whether Saeed and Meftah had established the probable validity of their real property claim. Preliminarily, the court observed: "Expungement of an improper lis pendens is mandatory, not discretionary. If the court finds that the claimant[s,] [that is, Saeed and Meftah,] ha[ve] not established by a preponderance of the evidence the probable validity of the real property claim, the lis pendens must be expunged. (Code Civ. Proc. § 405.32.)" The court added: " ' "Probable validity," with respect to a real property claim, means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim.' (Code Civ. Proc., § 405.3.)"

The trial court also noted: " 'Unlike other motions, <u>the burden is on the party opposing the motion</u> to expunge—i.e., the claimant-plaintiff—to establish the probable validity of the underlying claim. The claimant-plaintiff must establish the probable validity of the claim by a preponderance of the evidence… That is, the plaintiff must "at least establish a prima facie case. If the defendant makes an appearance, the court must then consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." ' (*Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 319 [].)"

The trial court continued: "Here, plaintiffs have opposed the motion, and argue that there is probable validity [to] their claim for specific performance." The court set forth the elements of a claim for specific performance: " 'To obtain specific performance after a breach of contract, a plaintiff must generally show: "(1) the inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms

13.

which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract." ' (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472.)"

The trial court next found that Saeed and Meftah had established a prima facie case on their specific performance claim. The court explained: "Plaintiffs argue the well-known principle that there is a presumption of uniqueness and therefore inadequacy of damages when the subject matter is real property. The contract is reasonable, as the consideration for the underlying contract is an exchange of property for property, which is adequate consideration. Plaintiffs assert that mutuality of remedies exists as both parties undertook reciprocal obligations to convey their respective parcels. Such mutuality is unrefuted by defendant. The agreement identifies the two specific parcels of land to be exchanged and presents essential terms of the contract to be followed. There is a similarity of contract and requested performance as the exchange sought by plaintiffs is that which is outlined in the parties' agreement."

The trial court further considered the relative merits of the positions of both sides. The court noted: "As plaintiffs can establish a prima facie case for their claim of specific performance, the court must consider the merits of the respective positions of the parties. The parties are in dispute as to when and if the agreement was properly executed. Plaintiffs' position is that the City and one of the plaintiffs executed the agreement on June 26, 2023, six days after the date for close of escrow contemplated by the agreement (i.e., June 20, 2023.). (Saeed Decl., ¶ 4.) Plaintiffs state that the City knew and agreed for the other plaintiff to sign the agreement on his later return to the country. (*Id*., ¶ 5.) Plaintiffs claim they didn't know the City didn't intend to proceed with the deal until October 25, 2023. (*Id*., ¶ 8.) Plaintiffs offer deposition testimony of Juanita Veliz (City Clerk of the City of Huron) and Rey Leon (Mayor of the City of Huron) to argue that the date of execution of the agreement by *both* parties is in question."

14.

The trial court also delineated City's position. In this regard the court noted: "Defendant relies on the e-mail sent by Juanita Veliz on June 12, 2023 to counter that the agreement was already 'corrected and signed' by the City when picked up by plaintiffs or their representatives [on June 9, 2023]. (Costanzo Decl., ¶ 10.)" The court further observed: "Defendant contends that it was solely the plaintiffs who did not provide the City with a fully executed copy of the agreement [until] October 26, 2023. (*Id.*, ¶ 11.) Defendant indicates it was understood to be the City's responsibility to deposit the agreement into escrow. (*Id.*, ¶ 12.) Defendant's position is that it could not be done without receipt of the fully executed agreement. It's not made clear when the agreement fully executed by all parties was finalized, but it appears to be at least on or prior to October 26, 2023. (*Id.*, ¶ 11.)"

The trial court concluded: "Considering the present issues of fact and the parties' conflicting evidence, defendant has not sufficiently demonstrated that plaintiffs['] prima facie case for specific performance cannot stand. There is a fully executed agreement before the court and a showing that plaintiffs were ready and willing to perform the contract. At this time, the court is inclined to find that plaintiffs' claim of specific performance has probable validity and deny the motion to expunge lis pendens."

In sum, the trial court was ultimately persuaded that Saeed and Meftah had carried their burden to show, by a preponderance of the evidence, the probable validity of the specific performance cause of action in their complaint. Accordingly, the court denied City's motion to expunge lis pendens.

Upon denying City's motion to expunge lis pendens, the trial court addressed the issue of awarding statutory attorney fees to Saeed and Meftah as the prevailing parties on the motion. The court stated in its ruling: "Under Code of Civil Procedure section 405.38, '[t]he court *shall direct* that the party prevailing on any motion under this chapter be awarded the reasonable attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or

15.

that other circumstances make the imposition of attorney's fees and costs unjust.' (Code Civ. Proc., § 405.38, italics added.) Thus, an award of fees is mandatory unless the court specifically finds that [City] acted with substantial justification or there are other circumstances that would make the imposition of fees unjustified."

The trial court added: "Here, plaintiff[s] [have] not request[ed] any costs or fees. The court will not speculate to award attorney's fees and costs, *without prejudice to the prevailing party bringing a separate fees motion*." (Italics added.)

**City Filed Writ Challenging Trial Court's Ruling; Writ was Summarily Denied**

On May 14, City filed a "Petition for Writ of Mandate, Review and/or Prohibition or Other Appropriate Extraordinary Relief," in this court, challenging the trial court's denial of City's motion to expunge lis pendens. On July 3, this court summarily denied City's writ petition. Therefore, the trial court's ruling on City's motion to expunge lis pendens remains intact and the lis pendens at issue remains in place.

**Saeed and Meftah's Motion for Statutory Attorney Fees**

Around May 29, Saeed and Meftah filed a motion for statutory attorney fees and costs pursuant to section 405.38, on grounds they were the prevailing parties on City's motion to expunge lis pendens, which was denied by the trial court on April 30. They requested $18,726.94 in attorney fees. The motion further stated that it was "made pursuant to California Rules of Court, rule 3.1702 and [was] based on the grounds that Plaintiffs are entitled to recover reasonable attorney's fees as the prevailing parties under the statute."

**Trial Court Granted Saeed and Meftah's Motion for Statutory Attorney Fees**

On July 23, the trial court issued a written ruling "grant[ing] [Saeed and Meftah's] motion for attorney's fees and costs in the reduced amount of $5,690.44."

In its ruling, the trial court explained its reasoning:

"Plaintiffs Abdo T. Saeed and Saber Mohammed Saeed Meftah bring this motion for attorney's fees and costs pursuant to Code of Civil Procedure

section 405.38 and California Rules of Court, rule 3.1702, following the court's order issued on April 30, 2025 denying defendant City of Huron's motion to expunge lis pendens.

"Parties prevailing on a motion to expunge lis pendens are entitled to recover their reasonable attorney's fees. 'The court shall direct that the party prevailing on any motion under this chapter [i.e., a motion to expunge lis pendens] be awarded the reasonable attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust.' (Code Civ. Proc. § 405.38.)

"The City did not succeed on its motion to expunge lis pendens and thus plaintiffs are indisputably the prevailing parties for the purposes of recovering fees. (See language of Code Civ. Proc. § 405.38 ['party prevailing on … motion']. Rule 3.1702 of the California Rules of Court provides that these statutory attorney's fees may be claimed prior to an entry of judgment, as the statute refers to 'reasonable fees' to be determined by the court.

" 'A notice of motion to claim attorney's fees for services up to … judgment in the trial court … must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case[.]' (Cal. Rules of Court, rule 3.1702(b)(1).) This rule (titled 'Claiming attorney's fees – (b) Attorney's fees before trial court judgment) applies in civil cases to claims for statutory attorney's fees when the court determines the amount of the fees because the statute refers to 'reasonable fees.' (Cal. Rules of Court, rule 3.1702(a).)"

The trial court also addressed City's argument that City had substantial justification for bringing the motion to expunge lis pendens and that other circumstances further rendered imposition of attorney fees unjust. In this context, the court ruled:

"Defendant argues that there was substantial justification for bringing the motion to expunge lis pendens, rendering an imposition of attorney's fees and costs unjust. 'The phrase "substantial justification" has been understood to mean that a justification is clearly reasonable because it is well-grounded in both law and fact.' (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434 [(*Doe*)]; see also *City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, 291.) Defendant contends that it had substantial justification to move to expunge the lis pendens because it believed and therefore treated the parties' agreement to exchange real property as 'discharged.' [Citation.] However, the City had entered into a

17.

subsequent purchase agreement with a third party that was contingent on the removal of the lis pendens. The agreement's validity and effect are central to the present action and lend themselves to *questions of fact, rather than* facts that were well-established and [that would] support bringing a motion to expunge the lis pendens. The court does not find there to be a substantial justification that would make the imposition of attorney's fees under Code of Civil Procedure section 405.38 unjust." (Italics added.)

In its ruling, the trial court further addressed an additional argument made by City as to why statutory attorney fees should not be awarded. Specifically, City argued that since Saeed and Meftah could potentially recover contractual attorney fees should they eventually prevail on their underlying complaint, they were precluded from recovering attorney fees under section 405.38. The court ruled: "Defendant argues that an attorney's fee provision in the contract at issue provides for an award of attorney's fees to the prevailing party on an action concerning the agreement, and that allowing plaintiff to recover attorney's fees now would be unjust. The court disagrees. The attorney's fees at issue are ones to which plaintiff[s] [are] statutorily entitled as the party prevailing on the motion to expunge lis pendens."

**City Filed Instant Writ Petition Challenging Trial Court's Attorney Fees Ruling**

On August 14, City filed the instant petition for writ of mandate, review and/or prohibition or other appropriate extraordinary relief, challenging the trial court's ruling awarding Saeed and Meftah $5,690.44 in statutory attorney fees. Saeed and Meftah filed an informal opposition, and City filed an informal reply. On December 4, this court issued an order to show cause with respect to City's petition. Pursuant to the order to show cause, Saeed and Meftah filed a return, and City filed a reply to the return.

We note that, pursuant to section 405.39, a petition for writ of mandate is the exclusive means for challenging an order on a motion made under the lis pendens statutes. (See *J&A Mash & Barrel, LLC v. Superior Court* (2022) 74 Cal.App.5th 1, 16.) Section 405.39 provides: "No order or other action of the court under this chapter[, that is, the chapter governing lis pendens,] shall be appealable. Any party aggrieved by an

18.

order made on a motion under this chapter may petition the proper reviewing court to review the order by writ of mandate." Section 405.39 also sets a short 20-day deadline for filing a writ petition.

Here, the attorney fees award at issue was authorized by section 405.38, a statute contained in the chapter governing lis pendens. Accordingly, attorney fee awards made under section 405.38 are exclusively reviewed by means of a writ. (See *Shah v. McMahon* (2007) 148 Cal.App.4th 526, 529 ["The attorney[] fee order from which the [petitioners] appeal was made pursuant to Code of Civil Procedure section 405.38, which is part of chapter [governing lis pendens] Accordingly, the [petitioners'] only remedy was to seek a writ of mandate within the time limits imposed by section 405.39."].)

## DISCUSSION

### I. Trial Court Properly Awarded Statutory Attorney Fees in Accordance with California Rules of Court, Rule 3.1702

#### A. City's Contentions

As noted, the trial court denied City's motion to expunge lis pendens. At the time the court denied City's motion to expunge, there was no attorney fee request from Saeed and Meftah pending before it. Therefore, the court declined to award attorney fees in its ruling denying City's motion to expunge lis pendens. However, the court clarified its declination was "*without prejudice to the prevailing party bringing a separate fees motion*." (Italics added.)

As described above, Saeed and Meftah subsequently filed a motion for statutory attorney fees under section 405.38, which motion was granted by the trial court. Saeed and Meftah's motion referred to California Rules of Court, rule 3.1702 (Rule 3.1702) to support the *timing* of the motion. The trial court ruled the motion was timely under Rule 3.1702. City argues Rule 3.1702 is inapplicable under the circumstances because it solely governs *post-judgment* attorney fee motions.

19.

City challenges the trial court's reliance on Rule 3.1702 to justify the timing of Saeed and Meftah's motion for attorney fees. Specifically, City contends that in relying on this rule, the court "employed [a] procedure that is limited to making an award of attorney's fees to a prevailing party following the notice of entry of judgment." City insists that Rule 3.1702 does "not authorize a prejudgment motion for an award of attorney's fees." City emphasizes: "The trial court acted in excess of its jurisdiction in awarding fees because the court has no authority to adopt the procedure under … Rule 3.1702 to award fees based on who prevails on a prejudgment motion."

City suggests that, as far as attorney fees under section 405.38 are concerned, Saeed and Meftah were required to request such fees *before* the trial court ruled on City's underlying motion to expunge lis pendens, so the court could adjudicate the attorney fee request as part of its ruling on the underlying motion. Specifically, City contends: "Plaintiffs waived any right to claim an award of attorney's fees on the motion to expunge lis pendens by failing to request fees in [their] opposition or at the time of hearing on that motion."

We reject the City's contentions.

**B.     *Analysis***

Although a trial court's ruling on the propriety of an attorney fee award is generally reviewed under an abuse of discretion standard, the issue whether the court had the authority to make such an award is a question of law that we review de novo. (*Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 460 (*Carpenter*); *George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 138.)

Rule 3.1702 is entitled, "Claiming attorney's fees." Rule 3.1702(a) and (b) are relevant here. Rule 3.1702(a), entitled "Application," provides: "Except as otherwise provided by statute, this rule applies in civil cases to claims for statutory attorney's fees and claims for attorney's fees provided for in a contract. Subdivisions (b) and (c) apply when the court determines entitlement to the fees, the amount of the fees, or both,

20.

whether the court makes that determination because the statute or contract refers to 'reasonable' fees, because it requires a determination of the prevailing party, or for other reasons."

Rule 3.1702(b) is entitled "Attorney's fees *before* trial court judgment." (Italics added.) Rule 3.1702(b)(1), entitled "*Time for motion*," provides: "A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court—including attorney's fees on an appeal before the rendition of judgment in the trial court—must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case or under rules 8.822 and 8.823 in a limited civil case."

Existing case law clarifies the application of Rule 3.1702. First, Rule 3.1702 was " 'adopted in order to provide time limits within which *all motions for attorney fees* in civil cases must be made.' " (*Hatlevig v. General Motors LLC* (2026) 118 Cal.App.5th 644, 649 (*Hatlevig*), italics added.) Second, "Rule 3.1702 does *not* require an appealable order or judgment even though it uses 'the time for filing a notice of appeal' to set the deadline for serving and filing a motion for attorney fees." (*Ibid.*, italics added; *Carpenter*, *supra*, 151 Cal.App.4th at p. 468 ["The history of rule 3.1702 indicates that the '*outside*' time limit for claiming prejudgment statutory attorney fees was intended to be entry of a final judgment[.]"], italics added.)

*Hatlevig* and *Carpenter* clarify that while Saeed and Meftah had the option to file a fee request along with their opposition to City's motion to expunge lis pendens, *they were not required to do so*. A request for *prejudgment*, statutory attorney fees can properly be deferred so long as it is timely made under Rule 3.1702. Furthermore, although Rule 3.1702 uses the time for filing a notice of appeal to set the *outside* deadline for serving and filing a motion for attorney fees, an appealable order or judgment is *not* required in order to request attorney fees. (See *Hatlevig, supra,* 118 Cal.App.5th at p. 649; *Carpenter*, *supra*, 151 Cal.App.4th at p. 458 ["[r]ule 3.1702 imposes [outside]

time limits for filing a motion for prejudgment statutory attorney fees in civil cases" that "commence to run upon entry of judgment at the conclusion of a lawsuit"]; accord *Catlin Ins. Co., Inc. v. Danko Meredith Law Firm, Inc.* (2022) 73 Cal.App.5th 764, 781.) City's contentions regarding Rule 3.1702 are not supported by any relevant authority.

Since Saeed and Meftah moved for fees well before entry of judgment and the time for filing a notice of appeal from the judgment, their fee request was timely under Rule 3.1702. Accordingly, the trial court did not err in considering and ruling on the fee request.

## II. Trial Court's Determination that City's Motion to Expunge Lis Pendens Lacked Substantial Justification Was Not an Abuse of Discretion

Under section 405.38, a prevailing party on a motion to expunge a lis pendens is entitled to recover reasonable attorney fees and costs "unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees unjust." (§ 405.38.) The term " '[s]ubstantially justified' " has been construed to mean " 'not necessarily a prevailing position' but one which is ' "justified to a degree that would satisfy a reasonable person" or … has a " 'reasonable basis both in law and in fact.' " ' " (*Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1188-1189 (*Lennane*); *Doe, supra,* 200 Cal.App.4th at p. 1434.) We review the trial court's decision on this point for abuse of discretion. (*Lennane*, at p. 1189.)

In granting Saeed and Meftah's motion for attorney fees, the trial court determined that City's motion to expunge lis pendens lacked substantial justification. As noted above, the trial court explained: "Defendant contends that it had substantial justification to move to expunge the lis pendens because it believed and therefore treated the parties' agreement to exchange real property as 'discharged.' [Citation.] However, the City had entered into a subsequent purchase agreement with a third party that was contingent on the removal of the lis pendens. The agreement's validity and effect [i.e., that of the agreement between City and Saeed/Meftah] are central to the present action and lend

themselves to questions of fact, rather than facts that were well-established and [that would] support bringing a motion to expunge the lis pendens." City argues the trial court's determination that City did not act with substantial justification in moving to expunge the lis pendens is an abuse of discretion. We disagree.

City quibbles with the wording of the trial court's stated rationale. Specifically, City takes issue with the court's statement that, prior to moving to expunge the lis pendens recorded by Saeed and Meftah, "City had entered into a … purchase agreement with a third party that was contingent on removal of the lis pendens." City focuses on the word "contingent" as used by the trial court.

As background, we note that City's counsel had attested in a declaration submitted with City's motion to expunge lis pendens that, in February 2024, City entered into an agreement to sell the disputed City-owned property to a *different* party. City's counsel had further attested in his declaration that City's *new* agreement—a Contingent Purchase and Sale and Development Agreement—was with BFFR LLC, an entity affiliated with Los Amigos Market.

City now argues that the trial court misconstrued City's agreement with BFFR LLC, insofar as the court noted the agreement was *contingent* on removal of the lis pendens. City notes its agreement with BFFR LLC was expressly contingent on various things but not Saeed and Meftah's lis pendens, as the lis pendens had not yet been recorded when the agreement with BFFR LLC was made.

City's argument is disingenuous. It is amply clear the trial court's reference to the lis pendens as a contingency was *not* a reference to an express contingency encompassed in the purchase agreement between City and BFFR LLC. Rather, the court was simply referring to the fact that the lis pendens subsequently recorded by Saeed and Meftah had created a cloud on the title to the property that was the subject of the City's agreement with BFFR LLC. The court correctly observed that as long as Saeed and Meftah's lis

pendens remained in effect, City and BFFR LLC could not perform on their contractual agreement. We conclude City's quibble with the court's phrasing does not assist City.

City also does not persuasively address the trial court's other point, that is, that the issue of the validity of the written, signed agreement between City on the one hand, and Saeed and Meftah on the other hand, turned on disputed factual issues, such as *when* the corrected agreement was signed by each party (the correction at issue simply entailed correctly listing Saeed and Meftah's names on the signature page). The court noted that, given the disputed nature of critical facts, City's motion to expunge lis pendens—driven by its desire to sell the property to a third party—was not substantially justified. The record amply supports the trial court's conclusion that critical facts were disputed, and that City brought its motion to expunge lis pendens without properly developing the relevant facts or even acknowledging the existence of critical factual disputes.

We find no abuse of discretion here. Further, even were we to apply de novo review, we would affirm the trial court's determination.

**III.  City Has Not Shown That Saeed and Meftah Were Limited to Contractual Attorney Fees, Such That Statutory Attorney Fees Were Unavailable**

The instant dispute centers on a signed, written agreement between City on one hand and Saeed and Meftah on the other. City's position is that the agreement is invalid, whereas Saeed and Meftah seek specific performance, among other remedies.

One provision in the disputed contract addressed attorney fees: "If either party named herein brings an action or proceeding to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action (or proceeding), on trial or appeal, shall be entitled to its reasonable attorneys' fees to be paid by the losing party as fixed by the Court (or if applicable, the arbitrator)."

City argues that, in light of the contractual attorney fee provision, the trial court erred in granting statutory attorney fees under section 405.38 to Saeed and Meftah. City ignores the fact that in its underlying motion to expunge lis pendens, *City itself sought*

24.

*attorney fees*. In fact, City's notice of motion to expunge lis pendens was entitled: "Notice of motion to expunge lis pendens and for attorney's fees and costs." (Capitalization omitted.) It is clear that City sought statutory attorney fees under section 405.38 (not contractual fees), given its position that the underlying contract is invalid.

With respect to the trial court's award of statutory attorney fees to Saeed and Meftah, City now contends: "A request for fees incurred on the motion is completely unnecessary," because "[w]hen this action has concluded there will be a prevailing party" and "[t]hat party will be entitled to recover all of its attorney's fees including fees incurred on the motion to expunge." City posits that, in light of the contractual attorney fee provision, "equitable considerations make [the statutory] award unjust and very unwise." Given City's position that the underlying contract is invalid, presumably City makes this argument in the alternative to some of its other contentions.

In any event, City does not address the import of the *mandatory* language of section 405.38, which provides: "The court *shall direct* that the party prevailing on any motion under this chapter be awarded the reasonable attorney's fees and costs of making or opposing the motion[.]" (Italics added.)

The trial court rejected City's argument that "allowing plaintiff[s] to recover attorney's fees now would be unjust," noting that "[t]he attorney's fees at issue are ones to which plaintiff[s] [are] *statutorily entitled* as the party prevailing on the motion to expunge lis pendens." (Italics added.) City has not shown that the court erred.

25.

## **DISPOSITION**

City's petition for a writ of mandate, or other relief, is denied. Real parties in interest, Saeed and Meftah, are awarded their costs on appeal.

SNAUFFER, J.

WE CONCUR:

LEVY, Acting P. J.

MEEHAN, J.